C. F. SEEFUS, APPELLEE, v. WERTER DE VAUGHN,
APPELLANT.

FILED MAY 17, 1922. No. 21754.

1. **Sales: IMPLIED WARRANTY.** Where seed corn is sold by sample
and the buyer is furnished with a sample for the purpose of mak-
ing a test as to germinating qualities, and there is nothing in the
contract between the parties to negative an implied warranty, a
warranty will be implied that the bulk of the corn to be sold is
substantially the same as the sample in kind and quality and in
its germinating powers.

2. ———: ———: **REFUSAL OF GUARANTY.** An affirmative refusal
by the vendor to guarantee the germinating qualities of the bulk
of the corn to be furnished will negative an implied warranty as
to such qualities.

3. ———: **GUARANTY: INSTRUCTIONS.** An instruction, declaring if
the jury found that the vendor, selling by sample, did not guar-
antee the corn as to its germinating qualities, that then the ven-
dor was only bound, by his contract, to furnish such corn as
would be substantially the same as the sample, *except as to ger-
mination, held* erroneous, since the jury were not also, in that

event, required to find that the vendor had expressly refused to make a guaranty covering the quality of germination.

APPEAL · from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*Baldrige & Saxton,* for appellant.

*Kennedy, · Holland, De Lacy & Horan, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY and FLANSBURG, JJ.

FLANSBURG, J.

This was an action to recover the purchase price of a certain amount of seed corn, alleged to have been sold by the plaintiff to the defendant. The plaintiff recovered a judgment, and the defendant appeals.

The defendant denies that he purchased the corn from the plaintiff, and sets up as a defense that he was acting simply as a broker for the sale of the corn by the plaintiff to the McCullough Seed Company; and defendant also asserts that, after the corn had been delivered by the plaintiff to him and shipped to the McCullough Seed Company, it was retaken by the plaintiff, and a complete settlement, on the contract, made. These issues of fact, however, were passed upon by the jury under the directions of the court, and, upon an examination of the record, we do not find that the evidence is insufficient to support the jury's findings in those particulars.

The defendant, however, particularly complains of the instruction given by the court upon the question of warranties.

The seed corn was sold by sample. It appears that the plaintiff and the defendant had a conversation, some time before any contract was entered into, with regard to the 1917 corn crop, in which the defendant stated that he did not believe that there was good seed corn produced that season. The plaintiff replied that he had seed corn of that year which was of good germinating quality, and the defendant stated he would not take any corn without first

having a sample submitted to him so that he might test it. The plaintiff delivered such a sample to the defendant. The defendant's testimony is that the plaintiff agreed to furnish the corn according to the sample, and that nothing was said by the plaintiff regarding a guaranty as to germinating qualities. The testimony of the plaintiff as to that his conversation with the defendant was as follows: "I said, 'I will not guarantee germination.' I said, 'You seed houses don't guarantee germination or quality,' and I said, 'Why should I guarantee it when you seed houses do not?' And my son and Mr. Gilbert heard that. He (defendant) said, 'All I ask is that you give me corn and corn to your sample.' I said, 'I will give you corn to the sample I brought you;' and I did."

The sample seed corn furnished by the plaintiff to the defendant was, when tested, found by the defendant to test from 56 to 60 per cent. good germinating quality. There is testimony to show that, in order to be merchantable as seed corn, the germination must be above 50 per cent., and that the seed corn furnished under the contract, and later delivered to the McCullough Seed Company, tested below 50 per cent., and in a test of 2,200 seeds averaged only 18 per cent.

On this phase of the case, the court instructed the jury as follows: "It is conceded or established that the corn seed in question was sold by sample, and therefore the defendant had the right to demand that the corn should substantially compare with the sample in quality."

"You are instructed that in considering the question as to whether or not the corn was up to sample plaintiff claims that he did not guarantee the corn as to germination, and if the plaintiff has proved by a preponderance of the evidence that he did not guarantee germination, then plaintiff's only duty was to furnish corn substantially the same as the sample except as to germination."

The defendant complains that this instruction, as applied to his version of the evidence, is erroneous. His testimony is to the effect that nothing was said with regard

to guaranteeing the corn as to germination. Had it been conceded that the plaintiff had refused to guarantee as to germination, then, of course, no implied warranty would arise from the fact that the corn was sold as seed corn, nor would the seller then be bound to furnish corn that was fit for the purpose for which it was to be used.

Under the evidence the jury might have found that, though the plaintiff did not make any affirmative guaranty of the germinating qualities of the corn, still he did not expressly refuse to make such a guaranty. The plaintiff's testimony was that nothing was said between the parties upon the subject of guaranty, in which event the law would have raised an implied warranty that the corn was in substantial accord, in all essential qualities, with the sample furnished. Where goods are sold by sample, there is an implied warranty that the bulk of the goods will be equal in kind and quality, in all material respects, to the sample. *Borden v. Fine,* 212 Mass. 425; *Glanzer v. Armsby Co.,* 170 N. Y. Supp. 1055; *Holmes v. Cameron,* 267 Pa. St. 90; *Greenwood Cotton Mill v. Tolbert,* 105 S. Car. 273; *American Mfg. Co. v. McLeod & Co.,* 78 Fla. 162; 35 Cyc. 405. And where corn is sold by description for seed which is known to the seller, and there is nothing in the contract between the parties showing a refusal, on the part of the vendor, to warrant, there is an implied warranty that the corn is fit for seeding purposes and has reasonably sufficient germinating qualities. *Totten v. Stevenson,* 29 S. Dak. 71.

Plaintiff further contends that the defendant had full opportunity to inspect the bulk of the corn and, in fact, did so inspect it, and that, having had equal opportunity to judge its qualities with the plaintiff, no implied warranty would arise. Such inspection, however, did not precede the making of the contract. It appears only that when the defendant called for delivery of the corn he and his helper placed the corn in sacks for shipment, but this was after the contractual relations between the parties had been consummated. Whether or not defendant received

such information from his observation of the condition of the corn as he handled it, as to have given rise to a waiver of any warranty by his accepting it in such known condition, is not in the case.

It appears to us that the defendant was entitled to have submitted to the jury the issue of whether or not the plaintiff made an affirmative refusal to guarantee the germinating quality in the seed, and was entitled to have the jury instructed, if they should find that no such refusal was made and no agreement was made between the parties which would negative an implied warranty, that then such an implied warranty would, in law, arise, and that the plaintiff would, in that event, have the burden of showing that the bulk of the corn, for the price of which he was suing, was substantially the same as the sample in all essential particulars, including that of its germinating qualities. Such an instruction might have made a material difference in the result of the suit.

We are of opinion that the defendant is entitled to another trial. The judgment of the lower court is therefore reversed and the cause remanded for further proceedings.

REVERSED.